IN RE DISQUALIFICATION OF NEY.

AMERICAN LAUNDRY MACHINERY, INC. *v.* OKAMOTO ET AL.

[Cite as *In re Disqualification of Ney* (1995), 74 Ohio St.3d 1271.]

(No. 95–AP–042—Decided May 2, 1995.)

MOYER, C.J. This affidavit of disqualification was filed by George Strike, chairman and owner of American Laundry Machinery, Inc., seeking the disqualification of Judge Arthur M. Ney, Jr. from further proceedings in the above-captioned case.

In January of this year, Judge Ney granted a defendant's motion for partial summary judgment and later denied affiant's motion to allow the ruling to be appealed immediately. Subsequent to these rulings, affiant asserts that he discovered that one of the law partners of defendant's attorney served as chairman of Judge Ney's 1994 campaign committee. The partner is not involved as counsel of record in this case. Affiant claims that this relationship creates a conflict or an appearance of a conflict and that, had the relationship been disclosed earlier in the case, he would have sought Judge Ney's recusal. Moreover, affiant alleges that the ruling on the motion for summary judgment was the product of bias and prejudice arising from the close relationship between Judge Ney and another member of the law firm of defendant's attorney.

The record includes responses from Judge Ney and counsel for the defendant. These responses indicate that affiant's counsel of record is a law partner of the

chairman of the county political party that endorsed Judge Ney's reelection; that affiant's attorney contributed to Judge Ney's campaign committee; and that affiant's attorney personally solicited campaign contributions at the request of Judge Ney's campaign committee and forwarded these contributions to the campaign committee. Judge Ney denies any bias or prejudice and demonstrates that he would have to recuse himself from a great number of cases if disqualification were based solely on the status of a litigant or an attorney as a campaign supporter or contributor.

Article IV of the Ohio Constitution provides that members of the judicial branch of government shall be elected by popular vote of the citizens of Ohio. One reality of an elected judiciary is that judicial candidates must obtain financial and other forms of support to make voters aware of their qualifications while maintaining their impartiality and the integrity associated with judicial office. Canon 7 of the Code of Judicial Conduct shields judicial candidates from many of the dangers of political activity and the direct solicitation of contributions by restricting the political and fund-raising activity of judges and judicial candidates. Among other things, a candidate for judicial office is barred from directly soliciting contributions, but is permitted to establish a campaign committee to garner support for his or her candidacy. Members of the legal profession, who often are in the best position to gauge the qualifications of candidates for judicial office, are the primary targets of requests to serve on campaign committees and campaign contribution solicitations.

Affidavits of disqualification involving campaign issues are decided on a case-by-case basis. *In re Disqualification of Celebrezze* (1991), 74 Ohio St.3d 1231, 657 N.E.2d 1341 (disqualification is not mandated because a party or counsel to the underlying case campaigns for or against the judge), and *In re Disqualification of Sutula* (Feb. 13, 1994), No. 94–AP–025, unreported (disqualification is not mandated because affiant's counsel filed primary election petitions to run for the seat currently held by the judge and was a potential opponent of the judge); see, also, Opinion No. 87–023 of the Board of Commissioners on Grievances and Discipline.

The fact that one of the attorneys of record in a pending case practices law with the chairman of the judge's campaign committee is not, without more, grounds for disqualification. The record is devoid of evidence that Judge Ney's decisions in this case are the product of any bias or prejudice resulting from this indirect relationship. Moreover, I am reluctant to disqualify a judge after lengthy proceedings have transpired in a case, especially where the grounds for disqualification could have been known earlier. See *In re Disqualification of Pepple* (1989), 47 Ohio St.3d 606, 546 N.E.2d 1298.

In fact, it appears that affiant's attorney has an association with Judge Ney that is as close to the judge as that of defendant's attorney. To remove a judge from a case upon an affidavit filed, not soon after the judge was assigned the case but soon after an unfavorable ruling to affiant, under these circumstances would encourage judge-shopping.

For these reasons, the affidavit of disqualification is found not well taken and is denied.